# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2007-CA-00949-SCT

*MONTY C. FLETCHER AND SANDRA L.*
*FLETCHER*

*v.*

*JIMMIE L. LYLES, LEONEZE C. LYLES AND*
*KELLY DABBS REALTY, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/16/2007 |
| TRIAL JUDGE: | HON. SAMAC S. RICHARDSON |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | K. F. BOACKLE |
| ATTORNEYS FOR APPELLEES: | EDDIE J. ABDEEN |
| | JULIE P. RATLIFF |
| | G. TODD BURWELL |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 01/29/2009 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**LAMAR, JUSTICE, FOR THE COURT:**

¶1.     This case arises from a real-estate transaction involving a residence located at 136

Bridge Water Drive, Madison, Mississippi.  After the closing, the buyers, Monty C. Fletcher

and Sandra L. Fletcher ("the Fletchers"), sued the sellers, Jimmie L. Lyles and Leoneze C.

Lyles ("the Lyleses"), and the real estate firm, Kelly Dabbs Realty, Inc. ("Dabbs"), alleging

various fraud, negligence, and breach-of-contract claims.  The circuit court granted summary

judgment to the Lyleses and Dabbs, finding that the statute of limitations barred all claims. We must determine whether the claims are time-barred and also whether the trial court acted within its discretion in denying the Fletchers' motion to amend the complaint to add additional claims.

## BACKGROUND

¶2.     The allegations of the complaint arise from the failure to disclose various alleged defects in the home.  The Fletchers allege that both the Lyleses and Dabbs were aware of defects in the home that were not disclosed.  Some background information is helpful to an understanding of this dispute.

¶3.     Prior to the Lyleses, Kenny Simmons owned the home located at 136 Bridge Water Drive.  Simmons decided to sell his home, using Dabbs as the brokerage firm.[1]  Simmons entered into a real-estate contract with Dr. Alfredo and Mrs. Mary Rodriguez ("the Rodriguezes") for the purchase of the home.

¶4.     The Rodriguezes hired Don Walker with Building Inspection Service to inspect the home, and Walker conducted an inspection on June 8, 1999.  Walker prepared an inspection report in which he noted a possible foundation problem.  Both the Rodriguezes and Simmons received a copy of the Walker report.

¶5.     Because the Walker report noted a possible foundation problem, the Rodriguezes commissioned Jerry L. Jones, P.E., with Advanced Engineering Resources, Inc., to inspect the foundation.  Jones inspected the foundation on July 13, 1999, and he prepared a

---

[1]Simmons's real-estate agent was Joan Thomas.

foundation inspection report. Jones found the slab was not level and concluded "[p]ossible causes of the difference in elevation could be (1) differential settlement due to unconsolidated fill or natural soil or (2) the structure could have been constructed out of level."

¶6. Because of the two inspection reports, the Rodriguezes decided to cancel the real-estate contract with Simmons. The Rodriguezes could not remember whether their agent or Simmons's agent received a copy of the two reports. Likewise, Simmons could not remember if he gave his agent a copy of the Walker report.

¶7. After the Rodriguezes cancelled the real-estate contract, the Lyleses eventually bought the home from Simmons. At the time of purchase, the Lyleses had "knowledge of a report prepared by Don Walker" and required Simmons to make minor repairs to the home based on the Walker report.

## PROCEDURAL HISTORY

¶8. The Lyleses decided to sell their home and entered into a real-estate contract with the Fletchers on September 16, 2000. An employee of Dabbs acted as dual agent for the Lyleses and the Fletchers.[2] The real-estate contract contained a provision entitled "Property Conditions, Inspection and Acceptance of Property." The provision provided, in relevant part, the following:

[2]Alice Smith was the dual agent for the Lyleses and the Fletchers. The Lyleses and the Fletchers signed a dual-agency confirmation on August 8, 2000.

Seller agrees to deliver to Buyer the plumbing, heating, electrical, air conditioning, all appliances, and if one exists, the swimming pool, its equipment and accessories, in normal working condition, *and the roof with no leaks, at the time of closing* . . . . Seller furthermore specifically *covenants and represents that he has no actual knowledge of any defects in the condition of property* or of the appliances and systems referred to above. Seller agrees to provide a completed Seller's Disclosure Statement to Buyer. Buyer reserves the right to inspect property or to engage a qualified home inspector of Buyer's choice . . . .

(Emphasis added).

¶9. The contract also contained a provision entitled "Termite Inspection," and that provision provided:

Seller agrees to furnish a letter or report from a . . . termite control operator, stating that the property is free from active termite or other wood destroying insects, and structural insecurities therefrom . . . Seller shall have such treated and/or repaired if termites and/or structural insecurities . . . are found. The cost of any necessary treatment and/or repairs . . . will be paid by Seller.

¶10. The contract also provided that "[a]ll express representations, warranties and covenants contained herein *shall survive closing* except where herein specified to the contrary. All other contractual obligations shall terminate with the closing." (Emphasis added). Each party further agreed that "[n]either party has relied upon any statement or representations made by the other party or the sales representative bringing the parties together not contained herein. Neither party shall be bound by any terms, conditions, oral statements, warranties, or representations and not herein contained."

¶11. Prior to executing the real-estate contract, the Lyleses provided a seller's disclosure statement to the Fletchers. Under the category "Structural Items," the Lyleses reported that they were not aware of any past foundation repairs, and no repairs were "currently needed."

4

The Lyleses also indicated that they had never experienced problems with the roof. Under a "Miscellaneous" section of the disclosure statement, the Lyleses noted that they were not aware of any defects or needed repairs.

¶12.    Pursuant to the terms of the real-estate contract, the Fletchers engaged William E. Bates with AmeriSpec Home Inspection Service to inspect the home. Bates inspected the home on September 28, 2000, and the Fletchers received a copy of his report on September 29, 2000. Relevant to these proceedings, the report did not disclose any of the problems that the Fletchers assert in their complaint. The Fletchers also inspected the property on three separate occasions prior to closing, and they did not discover any problems of which they now complain. However, the Fletchers were told the home had active termites, and the property was treated for such prior to closing. The Fletchers also received a termite inspection report at closing; the report did not disclose any termite damage. The closing occurred on October 30, 2000.

¶13.    After closing, the Fletchers allege they discovered various defects with the home, including termite damage, "foundation problems, roof leaks and flooding of the garage." The Fletchers also discovered that the property surrounding their home could be improved, and they allege the Lyleses (through agent Alice Smith) represented the contrary to them. The Fletchers filed suit against the Lyleses and Dabbs on October 29, 2003.

¶14.    In their complaint, the Fletchers allege the Lyleses breached the covenant of good faith and fair dealing and the express terms of the real-estate contract. They also assert claims of fraudulent inducement and fraud/intentional misrepresentation against the Lyleses.

5

The Fletchers further allege the Lyleses breached Mississippi Code Section 89-1-501, et seq., which requires the seller's disclosure statement. As for claims against Dabbs, the Fletchers aver the broker is liable for negligent nondisclosure of material facts, breach of fiduciary duties, and breach of the covenant of good faith and fair dealing.

¶15. On January 26, 2006, the Fletchers filed a motion to amend their complaint to assert additional claims against the Lyleses and Dabbs. The Fletchers wanted to add claims of negligent misrepresentation and negligent inducement against the Lyleses. The Fletchers also wanted to add two claims against Dabbs: (1) breach of Section 73-35-21(1)(a) of the Mississippi Code, which prohibits the real-estate agent from "[m]aking any substantial misrepresentation in connection with a real estate transaction"; and (2) breach of Rule IV.B.7 of the rules and regulations of the Mississippi Real Estate Commission for failure to keep the Walker and engineering reports on file for three years. Furthermore, the Fletchers wanted to assert damages against Dabbs pursuant to Section 73-35-31(2) of the Mississippi Code.[3]

¶16. On July 7, 2006, Dabbs filed a motion for summary judgment asserting that the Lyleses' claims were barred by the three-year statute of limitations set forth in Section 15-1-49 of the Mississippi Code. Dabbs argued the statute of limitations for all claims began to

---

[3]Section 73-35-31(2) provides that "any person, partnership, association or corporation" that receives "any sum of money, or the equivalent thereto, as commission, compensation or profit by or in consequence of his violation of any provision of this chapter . . . shall also be liable to a penalty of not less than the amount of the sum of money so received and not more than four (4) times the sum so received, as may be determined by the court, which penalty may be sued for and recovered by any person aggrieved . . . in any court of competent jurisdiction." Miss. Code Ann. § 73-35-31(2) (Rev. 2008).

6

run September 16, 2000, the date the real-estate contract was signed. Alternatively, Dabbs argued that the statute of limitations began to run at the latest on September 29, 2000, the date the Fletchers received the AmeriSpec report.

¶17.    The Lyleses filed a joinder to Dabbs's motion for summary judgment. Additionally, the Lyleses argued the alleged breach regarding the seller's disclosure statement accrued August 8, 2000, the date the Fletchers received the disclosure statement. The Lyleses also assert that the claims for fraudulent and/or negligent inducement to enter the real-estate contract accrued on the execution date of the contract, September 16, 2000. Because the Fletchers filed their complaint on October 29, 2003, the Lyleses argue that all claims are time-barred. In response, the Fletchers assert that the statute of limitations began to run on the closing date, October 30, 2000.

¶18.    The trial court denied the Fletchers' motion to amend due to futility. The trial court found that as a matter of law the "plaintiffs could not have been negligently induced to enter into the September 16, 2000 Purchase Contract by the Lyles." The trial court also found that as a matter of law, Dabbs was not required to keep the Walker and engineering reports, and therefore, could not have violated Section 73-35-21 of the Mississippi Code.

¶19.    The trial court ruled the statute of limitations accrued on the execution date of the real-estate contract or the date the Fletchers received their independent inspection report. Accordingly, the trial court determined all claims were time-barred and granted summary

7

judgment to the Lyleses and Dabbs.[4] Thereafter, the Fletchers timely filed a notice of appeal.

The Fletchers appealed "the final judgment entered in this case on April 16, 2007."[5]

## DISCUSSION

**I. Whether the Trial Court Erred in Holding That the Statute of Limitations Barred the Fletchers' Claims.**

¶20.    This Court applies a de novo standard of review to the statute of limitations. ***Ellis v. Anderson Tully Co.***, 727 So. 2d 716, 718 (Miss. 1998). Furthermore, "[t]his Court reviews grants of summary judgment under the de novo standard." ***Bullard v. Guardian Life Ins. Co. of Am.***, 941 So. 2d 812, 814 (Miss. 2006). Pursuant to Rule 56 of the Mississippi Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Miss. R. Civ. P. 56(c). The court views the evidence in the light most favorable to the nonmoving party. ***Univ. of Miss. Med. Ctr. v. Easterling***, 928 So. 2d 815, 817 (Miss. 2006). "The moving party bears the burden of demonstrating there is no genuine issue of material fact." ***Id.***

---

[4]This Court notes that the motion for summary judgment contains arguments relating to the merits of the Fletchers' claims. However, the trial court granted summary judgment solely on the statute-of-limitations issue. In this opinion, we address only the statute of limitations, not the merits of any of the claims asserted by the Fletchers.

[5]This statement is relevant to the Court's determination of whether the Fletchers timely appealed the order denying their motion to amend, which will be discussed in Issue II of this opinion.

¶21. There is no dispute that the applicable statute of limitations for the claims asserted by the Fletchers is three years pursuant to Section 15-1-49 of the Mississippi Code. *See also CitiFinancial Mortgage Co. v. Washington*, 967 So. 2d 16, 17 (Miss. 2007) (ruling three-year statute of limitations applies to breach of fiduciary duty, breach of implied covenant of good faith and fair dealing, fraudulent misrepresentation, and breach of contract); *Sanderson Farms, Inc. (Prod. Div.) v. Ballard*, 917 So. 2d 783, 789 (Miss. 2005) (ruling three-year statute of limitations applies to claims of fraud and fraudulent inducement). Section 15-1-49(1) provides, in part, that:

> (1) All actions for which no other period of limitation is prescribed shall be commenced within three (3) years next after the cause of such action *accrued*, and not after.
> (2) In actions for which no other period of limitation is prescribed and which involve latent injury or disease, the cause of action does not *accrue* until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury.

Miss. Code Ann. § 15-1-49(1),(2) (Rev. 2003) (emphasis added).

¶22. The narrow question presented by this case is when did the Fletchers' causes of action accrue. While various fraud, statutory, breach-of-contract, and tort claims are raised by the Fletchers, they all arise out of the negotiations for the purchase of this home, the resulting contract to sell, and the accompanying seller's disclosure statement, all of which culminated in a sale of this residence to the Fletchers completed on October 30, 2000. This Court previously has stated that a real-estate contract "contemplate[s] a consummation via another exchange of documents some weeks in the future and [is] in this sense a contract to make a contract." *Leach v. Tingle*, 586 So. 2d 799, 802 (Miss. 1991). These asserted causes of

9

action involve acts which were continuing up to and through the consummation of this real-estate transaction. In considering the statute of limitations in the context of a real-estate transaction in which the buyer claimed the seller had made false representations regarding the land sold, this Court has held that "the purchaser's right of action for such deceit *accrues* upon the *completion of the sale* induced by such false representation, or *upon the consummation of the fraud*." ***Dunn v. Dent***, 169 Miss. 574, 153 So. 798 (1934) (emphasis added).

¶23. This Court has held that for purposes of a statute of limitations, a cause of action *accrues* "'when it comes into existence as an enforceable claim, that is, when the right to sue becomes vested.'" ***Bullard v. Guardian Life Ins. Co. of Am.***, 941 So. 2d 812, 815 (Miss. 2006) (quoting ***Forman v. Miss. Publishers Corp.***, 14 So. 2d 344, 346 (1943)). Further, we have held that a statute of limitations "begins to run when all the elements of a tort, or cause of action, are present." ***Caves v. Yarbrough***, 2008 Miss. LEXIS 617, at *12 (Miss. Sept. 25, 2008). While there are various elements to the separate claims made in this case, they all require the common element of damages. The Fletchers were without any cause of action until they suffered damages. The record is devoid of any proof that the Fletchers suffered actual damages prior to the date of closing when they purchased the home. "In the absence of damage, no litigable event arose." ***Guardian Life Ins. Co. of Am.***, 941 So. 2d at 815. Without damages, the Fletchers would not have had a viable cause of action against either the Lyleses or Dabbs if suit had been filed after the execution date of the real-estate contract (the date Lyleses and Dabbs assert the causes of action accrued), but prior to closing.

10

¶24.   In analyzing a statute-of-limitations issue under Section 15-1-49 of the Mississippi Code, this Court has held that "the statute of limitations commences upon discovery of an injury, and discovery is an issue of fact to be decided by a jury when there is a genuine dispute."  ***Donald v. AMOCO Prod. Co.***, 735 So. 2d 161, 167 (Miss. 1999) (citation omitted). Whether the Fletchers knew or should have known of the alleged defects or misrepresentations prior to closing is a disputed question of fact.  Viewing the evidence in the light most favorable to the Fletchers, as we must for summary judgment purposes, we find the trial court erred in finding as a matter of law that the statute of limitations accrued prior to the date of closing.

**II.  Whether the Trial Court Abused Its Discretion In Denying the Fletchers' Motion To Amend.**

¶25.   Dabbs argues this issue is not properly before the Court, as the notice of appeal did not contain any reference to the order denying the motion to amend.  However, the Fletchers' statement of issues and appellant brief clearly show they are appealing the order denying the motion to amend.  *See **K.D.F. v. J.L.H.***, 933 So. 2d 971, 974 n.2 (Miss. 2006) (finding basis of appeal clear from statement of issues and appellant brief).   Under Rule 3(c) of the Mississippi Rules of Appellate Procedure, "[a]n appeal shall not be dismissed for informality of form or title of the notice of appeal."  Miss. R. App. P. 3(c).  Therefore, we consider the merits of this issue.

¶26.   This Court considers a denial of amendment under an abuse-of-discretion standard. ***Moeller v. Am. Guar. & Liab. Ins. Co.***, 812 So. 2d 953, 961 (Miss. 2002).  Pursuant to Rule

15 of the Mississippi Rules of Civil Procedure, a "party may amend a pleading as a matter of course at any time before a responsive pleading is served . . . . Otherwise a party may amend a pleading only by leave of court or upon written consent of the adverse party; *leave shall be freely given* when justice so requires." Miss. R. Civ. P. 15(a) (emphasis added). This Court has stated "leave shall be freely given" when:

> [T]he underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason–such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.–the leave sought should, as the rules require, be "freely given."

*Am. Guar. & Liab. Ins. Co.*, 812 So. 2d at 962.

¶27. Before the trial court, Dabbs and the Lyleses argued the additional claims were barred by the statute of limitations. Neither defendant asserted any prejudice, and the additional claims clearly relate to the facts and averments in the original complaint. However, this Court must consider whether the potential claims are the "proper subject of relief" or "futile" as the trial court found. *See id.*

¶28. The trial judge found as a matter of law that *if* the Lyleses had knowledge of the two inspection reports, then such knowledge would support only a claim of fraud. As alluded to by the trial court, the extent of the Lyleses' knowledge is a material fact in dispute. The record discloses only that the Lyleses saw the Walker report, and the report only mentioned a possible foundation problem. Additionally, the engineering report disclosed only an

12

uneven slab, whereas the Fletchers have asserted numerous other defects in their complaint, which were not addressed by the engineering report. Furthermore, the Lyleses have never admitted that they had knowledge of the defects which the Fletchers discovered.

¶29.    This Court has stated "'[t]he basis for damages from negligent misrepresentation is the lack of care; the basis for damages resulting from fraud is the want of honesty.'" *Stonecipher v. Kornhaus*, 623 So. 2d 955, 964 (Miss. 1993) (quoting *First Money, Inc. v. Frisby*, 369 So. 2d 746, 750 (Miss. 1979)). We find it was an abuse of discretion for the trial court to determine that as a matter of law (especially during the discovery phase), the Fletchers could not have proven by a preponderance of evidence a "lack of care" on the part of the Lyleses. *Id.* The Lyleses' alleged knowledge of these two reports does not of necessity preclude a claim of negligence. This Court finds the trial court abused its discretion in denying the Fletchers' motion to amend to include the additional claims of negligent inducement and negligent misrepresentation.

¶30.    This Court must also determine whether the trial court abused its discretion in denying the Fletchers leave to amend to assert a cause of action for the alleged violation of Mississippi Code Section 73-35-21(1)(a) and Rule IV.B.7 of the rules and regulations of the Mississippi Real Estate Commission.[6] Section 73-35-21(1)(a) prohibits a real-estate agent

---

[6]In the order denying motion to amend complaint, the trial court noted "[t]he Plaintiffs' proposed amended complaint also seeks to add a statutory claim against Defendant Kelly Dabbs Realty, Inc. ("Dabbs") for violation of Miss. Code Ann. § 73-35-21, allegedly related to the proposed real estate transaction between Kenneth Simmons, the owner of the Bridge Water Drive Property prior to Lyles, and Alfredo and Mary Rodriguez."

13

from "[m]aking any substantial misrepresentation in connection with a real estate transaction." Miss. Code Ann. § 73-35-21(1)(a).  Under Rule IV.B.7, "[a] real estate broker must keep on file for three years following its *consummation*, complete records relating to any real estate transaction."  M.R.E.C. Rule IV.B.7 (emphasis added).

¶31.    The trial court found the "Simmons/Rodriguez sale was not completed and, therefore, was never consummated," and as such, "Dabbs was not required to maintain any documents and could not be found to have violated Miss. Code Ann. § 73-35-21 as a matter of law." The trial court further found that any amendment would be futile based on the fact that Simmons and the Rodriguezes never consummated their real-estate transaction by closing on the home.  We cannot say that the trial court abused its discretion in denying the motion to amend to add claims under Section 73-35-21 and Rule IV.B.7.

## CONCLUSION

¶32.    The trial court erred in finding as a matter of law that the statute of limitations for all claims accrued prior to the date of closing.  Furthermore, the trial court abused its discretion in denying the Fletchers leave to amend their complaint to assert claims of negligence against the Lyleses.  We affirm the trial court's denying the Fletchers leave to amend to add a violation of Mississippi Code Section 73-35-21 and Rule IV.B.7 of the rules and regulations of the Mississippi Real Estate Commission.  This Court reverses the trial court in all other respects and remands this case to the trial court for further proceedings consistent with this opinion.

¶33.    **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

14

**WALLER, C.J., CARLSON, P.J., DICKINSON, RANDOLPH, KITCHENS, CHANDLER AND PIERCE, JJ., CONCUR. GRAVES, P.J., CONCURS IN RESULT ONLY.**